IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CV-97-FL

| | |
|---|---|
| JENNY G. BEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| TOWN OF TOPSAIL BEACH, TOWN OF | ) |
| TOPSAIL BEACH POLICE | ) |
| DEPARTMENT, and JACOB ALLEN in | ) |
| his individual and official capacities, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion to dismiss part of plaintiffs' claims for failure to state a claim (DE 33), and defendants' motion to strike plaintiff's disclosures or motion to modify case management order (DE 37). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motion to dismiss is granted in part and denied in part, and defendants' motion to strike is denied, but the court modifies its case management order as set forth herein.

### STATEMENT OF THE CASE

Plaintiff commenced this action in Superior Court of Sampson County, North Carolina, on March 8, 2019, asserting claims arising out of the arrest of plaintiff for driving while intoxicated on March 28, 2016, and asserted application of excessive force, by defendant Jacob Allen ("Allen"), police officer for defendant Town of Topsail Beach ("Town") and Town of Topsail Beach Police Department ("Police Department"). In original complaint plaintiff sought damages

for violations of her Eighth Amendment and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, as well as state law claims for negligence, gross negligence, negligence per se, respondeat superior, assault, battery, punitive damages, and claims under the North Carolina Constitution. In first amended complaint filed April 15, 2019, plaintiff amended factual allegations regarding plaintiff's transport to the Police Department and replaced them with allegations that she was transported to the Pender County Jail.

Defendants removed to this court on May 14, 2019, and filed answer to the complaint on July 15, 2019. Case management order entered August 29, 2019, sets a deadline for discovery completion by July 30, 2020. With leave of court plaintiff filed a second amended complaint on December 16, 2019, adding claims based upon violation of her Fourth Amendment rights and for violation of Section 20 of the North Carolina Constitution.

On January 9, 2020, defendant filed the instant motion to dismiss newly-added claims in the second amended complaint, on the basis of time bar, as well as all claims under the North Carolina Constitution, on the basis of adequate alternative remedy. Plaintiff responded in opposition.

Defendant filed the instant motion to strike and motion to modify the case management order on February 19, 2020, relying upon plaintiff's expert witness disclosure, as well as correspondence and objections by counsel regarding the same. Defendants seek to strike plaintiff's expert disclosure. In the alternative, defendants move for an order compelling plaintiff to make complete and proper expert designations, or an order modifying the case management order to allow defendants time to make disclosures. Plaintiff opposes defendants' motion to strike, but consents to an extension of time.

## STATEMENT OF ALLEGED FACTS

The facts alleged in the operative second amended complaint may be summarized as follows. On March 28, 2016, plaintiff was driving a golf cart, with no other passengers other than her dog, on the roads of the Town. Defendant Allen, who was in a patrol car, encountered plaintiff, initiated field sobriety tests of plaintiff, and subsequently arrested her for driving while intoxicated. He placed her in handcuffs, whereby her arms were placed behind her back.

After placing plaintiff under arrest, defendant Allen allegedly improperly and incorrectly handcuffed plaintiff in such a manner that the handcuffs were very tight around the plaintiff's right wrist and this increased in severity as she moved about or was physically moved by Allen. Defendant Allen then placed the plaintiff in the front seat of his patrol car, where plaintiff allegedly was in excruciating pain and discomfort from the handcuffs and where plaintiff, allegedly in obvious distress, pleaded for Allen to fix the handcuffs because they were causing such pain. The handcuff on her right wrist was tighter than the one on the left.

According to plaintiff, defendant Allen refused to attend to plaintiff's pleas and refused to adjust or correct the mechanics of the handcuffs, but rather allegedly allowed plaintiff to continue to cry out from the pain that she was enduring as a result of these handcuffs. Defendant Allen also allegedly refused to remove plaintiff's handcuffs and put her arms in the front of her body. According to plaintiff, he could have reapplied the handcuffs and this would have resulted in less pressure on plaintiff's wrists.

Plaintiff was taken to the Pender County Jail which is located in Burgaw, North Carolina, where she was still handcuffs in the original position in which the handcuffs were placed before. Defendant Allen remained with plaintiff throughout her time at the Pender County Jail and

allegedly refused to remove the handcuffs despite requests for the handcuffs to be removed and despite this, took no action.

According to plaintiff, her pain and suffering continued for an extended period until the handcuffs were eventually removed; however, by the time the handcuffs were removed plaintiff allegedly had suffered a permanent injury to the nerves in her right wrist. According to plaintiff, if the handcuffs had been loosened, removed or repositioned at an earlier time, the injury to plaintiff's wrist could have been prevented entirely or have been less severe. Plaintiff allegedly was smaller in stature and size than defendant Allen and allegedly did not present a physical threat to him at any time on March 28, 2016. She also did not present a physical threat to any other employees and/or officers at the Pender County Jail.

According to plaintiff, she was not physically combative with Allen or other individuals at any time from when they first came into contact until she was released from the Pender County Jail. As a result of the conduct described above, plaintive allegedly suffered immediate pain and discomfort, swelling and bruising of her wrists and permanent damage to nerves in her right wrist, medical expenses, permanent impairment, pain and suffering, loss of wages, vocational opportunities in employment in the future and lost enjoyment of life.

**COURT'S DISCUSSION**

A.  Motion to Dismiss

   1.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

   2.   Analysis

      a.   Relation Back

Defendants argue that new claims asserted in the second amended complaint, and new allegations asserted in the first and second amended complaints, are time barred and do not relate back to the filing of the original complaint. In particular, defendant asserts plaintiff's Fourth Amendment and State Constitutional claims are time barred, along with allegations that plaintiff was transported to the Pender County Jail, instead of the Town Police Department.

Under the Federal Rule of Civil Procedure 15(c), an amendment to a pleading relates back to the date of the original pleading when, in pertinent part, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). In applying Rule 15(c), the United States Court of Appeal for the Fourth Circuit has "focused upon two issues in determining whether an amended claim relates back to an earlier complaint." Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983). "First, to relate back there must be a factual nexus between the amendment and the original complaint." Id. "Second, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." Id.

5

"[R]elation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 659 (2005). Thus, while claims may relate back if they all concern a "single occurrence" leading to a plaintiff's injury, they may not relate back if they "target[] separate episodes" of conduct by a defendant or group of defendants, "at a different time and place." Id. at 660.

In this case, plaintiff's Fourth Amendment claims and Section 20 of North Carolina Constitution claims relate back to plaintiff's original § 1983 claims and North Carolina Constitution claims. Indeed the new claims are asserted on the same basis as the original claims, in that they arise from plaintiff's arrest by Allen and alleged excessive force applied during and after the making of the arrest, until plaintiff was released from handcuffs. (Cf. 2nd Am. Compl. ¶¶ 61-70, 82; Compl. ¶¶ 65-72, 78). Defendants can be deemed to have notice of the claims because they are an additional legal theory arising out of the same core facts.

Defendants suggest that plaintiff's new factual allegations regarding transport to the Pender County Jail, rather than to the Police Department, render the new claims unrelated. But, all of plaintiff's claims share the nexus to defendant Allen's conduct in arresting plaintiff and accompanying plaintiff until she was released. (2nd Am. Compl. ¶ 21). While plaintiff removes allegations that defendant Allen transported plaintiff to the Police Department, the core facts of defendant Allen's conduct remain the same. (See id. ¶¶ 20-25). Furthermore, the new factual allegations do not create new grounds of liability for defendants Town and Police Department, but rather, if anything, remove or limit grounds for liability against defendants Town and Police Department.[1] Therefore, there is no basis upon which to find defendants prejudiced from the new factual allegations.

---

[1] Plaintiff does not state in second amended complaint or in opposition to the instant motion to dismiss that the new factual allegations create, in themselves, additional claims against defendant Town or Police Department. To

Cases cited by defendants also are inapposite. For example, defendants cite to Howard v. McCrory Corp., 601 F.2d 133, 135 (4th Cir. 1979). There, the court affirmed denial of a motion to amend complaint, where plaintiff originally brought claims for wrongful death of her child due to ignition of his pajamas, and the plaintiff sought to add claims over two years after commencement of the action on her own behalf for burns she suffered in attempting to rescue her child and for her own mental shock and anguish. Because the newly proposed claims in Howard raised additional personal injuries to the person of the mother rather than the child, they were categorically different from the additional constitutional claims and allegations added by the sole injured plaintiff in the instant case. Defendants also cite to Stamey v. Rutherfordton Elec. Membership Corp., 249 N.C. 90 (1958), but that case does not apply the current Rule 15(c) standard for relation back. See id. at 94.

In sum, that part of defendants' motion to dismiss seeking dismissal of new claims and new allegations in the second amended complaint on statute of limitations grounds is denied.

      b.      State Constitutional Claims

Defendants move to dismiss plaintiff's state constitutional claims on the basis that there is an adequate alternative remedy available.

The North Carolina Supreme Court has held that Article I of the North Carolina Constitution provides a direct cause of action to enforce the rights contained therein where there is an "absence of an adequate state remedy." Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992). However, the court "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." Id. at 784. Furthermore, "in exercising that power, the judiciary must minimize the encroachment upon other

---

the extent plaintiff suggests that the new factual allegations, in themselves, create additional claims against defendant Town or Police Department, such additional claims would be subject to a contrary analysis.

branches of government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to the right the wrong." Id.

An adequate state law remedy exists where there is a cause of action, at common law or created by statute, that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009). This means "a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Id. at 339-40. Accordingly, where "governmental immunity stands as an absolute bar" to a state common law claim, a plaintiff lacks "an adequate remedy at state law." Id. at 340. By contrast, a state common law claim provides an adequate state remedy even if it can only be brought against a defendant in his individual capacity, but not against defendants in their official capacities. See, e.g., Wilcox v. City of Asheville, 222 N.C. App. 285, 300 (2012) (holding that a claim against defendant in his individual capacity is sufficient to preclude plaintiff from asserting North Carolina Constitutional claim against the defendant in his official capacity); Rousselo v. Starling, 128 N.C. App. 439, 495 (1998) (same).

Here, plaintiff asserts state constitutional claims under Sections 19, 20, and 27, of the North Carolina Constitution. As pertinent to plaintiff's claims, section 19 prohibits seizures, or deprivation of life, liberty, or property, "but by the law of the land," and guarantees equal protection of the laws. N.C. Gen. Stat. Art. 1, § 19. Section 20 prohibits searches or seizures without specific warrants, "particularly described and supported by evidence." N.C. Gen. Stat. Art. I, § 20. Section 27 prohibits "cruel or unusual punishments." N.C. Gen. Stat. Art. I, § 27. Plaintiff asserts that the same conduct underlying her state common law claims also violates the North Carolina Constitution. (2nd Am. Compl. ¶¶ 63, 65, 67, 70). Plaintiff asserts common law claims of negligence, assault, and battery. (Id. ¶¶ 29-60). Thus, because plaintiff has an "adequate

8

state remedy" in the form of her common law claims, she is precluded from asserting her claims under the North Carolina Constitution. Corum, 330 N.C. at 782.

Plaintiff argues that her state constitutional claims should not be dismissed because defendants "have asserted various immunity claims which may be applicable to the first cause of action for negligence against Officer Allen." (Opp. (DE 9) at 9). It is true that defendant Allen "pleads any and all doctrines of governmental immunity, including but not limited to, the doctrines of qualified immunity, absolute immunity and public official immunity, in bar of all or any part of of Plaintiff's action which would be applicable." (Answer (DE 32) at 15). However, none of these defenses have, in this case, precluded plaintiff from having "at least the opportunity to enter the courthouse doors and present [her] claim." Craig, 363 N.C. at 340. Indeed, in their motion to dismiss, defendants do not foreclose the possibility that plaintiff may be able to proceed with tort claims against defendant Allen in his individual capacity. (See Defs' Br. (DE 34) at 6). Plaintiff may not maintain her state constitutional claims on the basis of the mere possibility that public official immunity may ultimately preclude relief against defendant Allen on plaintiff's state common law claims. See Craig, 363 N.C. at 340; see, e.g., White v. City of Greensboro, 408 F. Supp. 3d 677, 699 (M.D.N.C. 2019) (holding that "the affirmative defense of public official immunity does not render common law tort claims inadequate, for purposes of" precluding state constitutional claims) (internal quotations omitted).

Accordingly, defendant's motion to dismiss in this part is granted, and plaintiff's claims under the North Carolina Constitution are dismissed without prejudice.

B.  Motion to Strike

Defendants move to strike plaintiff's expert witness disclosure dated January 1, 2020, on the basis that the disclosure fails to attach written reports of the designated experts, including

9

supporting documentation as required by Federal Rule of Civil Procedure 26(a)(2)(B). In the alternative, defendants seek an order compelling proper designation of plaintiff's experts, and modification of the case management order to allow defendants 30 days from either plaintiff's complete and proper supplementation of her expert witness disclosures or the entry of an order on the instant motion, whichever occurs sooner.

  1. Rule 26(a)(2)(B) Disclosure

The individuals identified in plaintiff's expert witness disclosure are all treating physicians and a treating physical therapist. (See DE 37-1). Defendants suggest that Rule 26(a)(2)(B) requires plaintiff to submit an expert report for each such treating physician and therapist. However, the case law in this circuit does not support this approach. Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue in a published opinion, courts within the Fourth Circuit have held that "a treating physician is not required to submit a Rule 26(a)(2)(B) report where he or she is expected to testify to opinions formed during the course of treatment." Drennen v. United States, 375 Fed. Appx. 299, 306 (4th Cir. 2010) ("As a treating physician, Dr. Wolfe was not retained or specially employed to provide expert testimony in this case. The note accompanying the 1993 amendments to Rule 26 confirms that this is the proper interpretation of Rule 26."); see, e.g., Carrico v. Lewis Tree Serv., Inc., No. 2:15-CV-25-FL, 2016 WL 6459599, at *3 (E.D.N.C. Oct. 31, 2016) (same); Hall v. Sykes, 164 F.R.D. 46, 48 (E.D.V.A. 1995) ("If a treating physician forms an opinion of the causation of an injury to a patient and the prognosis of the patient's condition during the treatment then such opinion may be expressed by the treating physician without the necessity of a report under Fed. R. Civ. P. 26(a)(2)(B).").

Thus, the weight of authority within the Fourth Circuit holds that a treating physician does not constitute a "retained expert" for purposes of Rule 26(a)(2)(B) when the subject of expert

testimony encompasses opinions formed during the course of treatment. Accordingly, the court denies defendants' motion to strike plaintiff's expert witness disclosure solely on the ground that plaintiff did not produce expert reports, and accompanying documentation, for her physicians and therapist in the manner set forth in Rule 26(a)(2)(B).

2. Adequacy of Rule 26(a)(2)(C) Disclosure

A party who expects to introduce testimony from an expert who is not required to produce a written report under Rule 26(a)(2)(B) must disclose "the subject matter on which the expert is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and provide "a summary of facts and opinions to which the expert is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Here, plaintiff's expert witness disclosure meets the requirements of Rule 26(a)(2)(C). For each of plaintiff's physicians and therapist, plaintiff provides a summary of their qualifications, followed by a paragraph outlining the facts and opinions to which each "is expected to testify." (DE 37-1 at 1-3). While defendants suggest that they would have preferred to have a more complete exposition of opinions, facts, and data, upon which each expert relies, in the manner of Rule 26(a)(2)(B), the same level of detail is not required by Rule 26(a)(2)(C). Without benefit of specific discussion by defendants as to what details of the experts' fact and opinions they seek, the court will not direct plaintiff to supplement her Rule 26(a)(2)(C) disclosures. For good cause shown, however, the court will allow defendants an extension of 30 days from the date of this order in which to make their disclosures under Rule 26(a)(2). If defendants desire first an additional period of time to seek discovery regarding plaintiff's experts they may pursue additional extension, upon consent or otherwise through appropriate motion.

In sum, defendants' motion to strike is denied, and defendant's alternative motion to modify case management order is granted.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 33) is GRANTED IN PART and DENIED IN PART. Plaintiff is allowed to proceed with claims and allegations added in plaintiff's second amended complaint. Plaintiff's claims under the North Carolina Constitution are DISMISSED WITHOUT PREJUDICE. Defendants' motion to strike plaintiff's disclosures (DE 37) is DENIED, but defendant's alternative motion to modify case management order is GRANTED. Defendants are allowed an extension of 30 days from the date of this order in which to make their expert disclosures under Rule 26(a)(2). All other terms and conditions in the court's August 29, 2019, case management order not altered herein shall remain in full force and effect.

SO ORDERED, this the 31st day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge